# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LA PICA #3 LLC and WILLIAM RIVERA, <br><br> Defendants. | Case No. 15-CV-590-JPS <br><br><br> ORDER |

Plaintiff J&J Sports Productions, Inc. ("J&J") alleges that the defendants, La Pica #3, LLC ("La Pica") and William Rivera, showed the May 4, 2013 ("Fight Night") Floyd Mayweather, Jr. v. Roberto Guerrero WBC Welterweight Championship Fight (the "Fight") without the proper commercial licensing agreement. (*See* Docket #1). As such, J&J alleges violations 47 U.S.C. §§ 553 and 605. (Docket #1 ¶¶ 11–26).

On January 15, 2016, the defendants moved for summary judgment. (Docket #14). On February 17, 2016, J&J filed its opposition (Docket #16), and on March 2, 2016, the defendants filed a reply (Docket #22). On March 7, 2016, J&J filed a motion for leave to file a surreply (Docket #23), along with the surreply as an attachment (Docket #23-1). Because the defendants' reply brief raised new issues related to the timeliness of the opposition, the Court will grant J&J's motion to file a surreply. The motions are now fully briefed and ready for disposition. As discussed below, the Court finds material issues of fact exist to preclude summary judgment and, thus, the Court will deny the defendants' motion for summary judgment.

As a preliminary matter, however, the Court must first discuss the parties' arguments related to the timeliness of certain filings pertaining to summary judgment. First, J&J argues that the Court should not consider the motion for summary judgment because the defendants filed their statement

of facts untimely. Second, the defendants argue that J&J's opposition was untimely. The Court need not dwell on these issues, however, because it denies summary judgment on the merits and finds that no prejudice arose even if the submissions were untimely. As such, and in accordance with the Seventh Circuit's well-established policy favoring the resolution of cases on the merits, *see Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004), the Court will disregard the parties' arguments related to the timeliness of the briefing.

1. FACTUAL BACKGROUND[1]

J&J was granted exclusive commercial distribution rights to the Fight. (PPFF ¶ 1). As such, commercial establishments that sought to show the fight had to pay J&J a licensing fee, which varied by the size of the establishment. (PPFF ¶ 7).

La Pica is a bar located in Milwaukee, Wisconsin. (DPFF ¶ 1). The Fight was shown in La Pica pursuant to the request of a customer who brought in a digital TV box.[2] (DPFF ¶ 3). The defendants never paid a

---

[1]The cited facts are from the parties' proposed findings of fact, unless otherwise indicated. The Court will cite to the defendants' Proposed Findings of Fact (Docket #15) as "DPFF." The Court will cite to the plaintiff's Proposed Findings of Fact (Docket #17) as "PPFF." Unless otherwise indicated, the proposed findings to which the Court cites are undisputed.

[2]J&J disputes the relevance and admissibility of the customer's request to show the fight. (Pl.'s Resp. DPFF § 3). The Court nonetheless includes this fact to provide a clearer picture as to the events in question. The defendants allege that the customer brought in a cable box, which J&J disputes due to foundation and relevance. (Pl.'s Resp. § DPFF 3). Though the type of box is important to the ultimate outcome of this suit to the extent that it may shed light on which statute is at issue, it is not important for the purposes of this order. Thus, the Court will simply refer only to a "digital TV box."

licensing fee to J&J to watch the fight (PPFF ¶ 5). The defendants instead maintain that the Fight was purchased through an unnamed television provider's pay-per-view service (DPFF ¶ 5). A five dollar cover charge was in effect on Fight Night. The defendants allege that this was the standard cover for a Saturday night, and was not a special charge to view the Fight. (DPFF ¶ 10). Mr. Rivera is the registered agent for La Pica, a part-owner, and the manager of the bar. (DPFF ¶ 2; PPFF ¶¶ 2- 3). Mr. Rivera was present at La Pica on Fight Night, (PPFF ¶ 3), however, he maintains that he did not specifically authorize showing the Fight, (DPFF ¶ 8).

J&J's complaint alleges violations of 47 U.S.C. §§ 553 and 605. J&J's complaint presents alternative theories of liability depending on whether the defendants intercepted the signal via satellite or cable. (*See* Docket #1 ¶¶ 11–26). Section 553 governs the interception of cable television programming traveling over a cable network and gives the Court discretion to award between $250.00 and $10,000.00 in statutory damages for "all violations." 47 U.S.C. § 553; *United States v. Norris*, 88 F.3d 462, 468–69 (7th Cir. 1996). It also allows the maximum statutory award to be increased by up to $50,000.00 if a violation was committed willfully for commercial advantage. 47 U.S.C. § 553(c)(3)(B).

Section 605 governs the interception of programming as it travels through the air, *i.e.,* by satellite, and allows for statutory damages ranging from $1,000.00 to $10,000.00 for "each violation." 47 U.S.C. § 605. The maximum penalty increases to $100,000.00 per violation if the violations were committed willfully for commercial advantage. 47 U.S.C. § 605(e)(3)(c)(ii).

2. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

On summary judgment, courts must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Additionally, "[o]n summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Summary judgment is not appropriate 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson,* 477 U.S. at 248.

3.  DISCUSSION

The defendants' motion for summary judgment argues that: (1) the establishment is owned by La Pica and there is no basis for individual liability as to Mr. Rivera; (2) liability cannot exist because the defendants were authorized to receive the signal; (3) the § 605 claim must be dismissed because it was a cable signal; (4) there can be no liability under either § 553 or § 605 because there was no signal interception; and (5) alternatively, that the Court should grant partial summary judgment as to the claims for enhanced statutory damages. J&J opposes all aspects of the summary judgment motion, arguing specifically that material issues of fact exist to preclude summary judgment.

3.1     Individual Liability—Defendant Rivera

Mr. Rivera maintains that he is not a proper defendant in this action because La Pica owned the establishment that displayed the Fight. In determining the extent to which an individual is personally liable in this situation, the text of the statutes are silent on this issue and the Seventh Circuit has not adopted a specific test. Many courts, however, have adopted an approach promulgated in *Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971 (2d Cir. 1997), a copyright case, that found individual liability where the individual: (1) has a right and ability to supervise violations; and (2) possesses an obvious and direct financial interest in the misconduct. *See, e.g., Joe Hand Promotions, Inc. v. Speakeasy GB, LLC,* No. 12-C-0343, 2013 WL 64630, at *2 (E.D. Wis. Jan. 4, 2013)*; J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009); *J&J Sports Prods., Inc. v. Benson*, No. 06–CV–1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007); *J&J Sports*

*Prods., Inc. v. Daley*, No. CV 06-0238 ERKJO, 2007 WL 7135707, at *3 (E.D.N.Y. Feb. 15, 2007).

Here, the Court finds that material issues of fact exist to preclude summary judgment on this issue. J&J has established that Mr. Rivera had an ownership interest in the establishment and that Mr. Rivera was present on the night of the violation. The record is silent, however, as to Mr. Rivera's actual involvement in authorizing the showing of the Fight.

Mr. Rivera relies on distinguishable cases where a defendant's individual involvement was far less than the facts presented here. *See 291 Bar & Lounge*, 648 F.Supp.2d at 473 (finding no individual liability where the "plaintiff has made no allegation that [individual defendant] was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it."); *J&J Sports Prods v. Daley*, No. CV 06–0238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007) ("[T]here is nothing other than speculation to support the conclusion that [individual defendant] played any part in the violations of the FCA committed by [the defendant establishment], and even less to support the conclusion that any role he did play would warrant imposing individual liability."). Conversely, courts which have found individual liability in this situation are grounded in facts even less concrete. *See* Welch, 2010 WL 4683744, at *6 (finding individual liability where complaint alleges that defendant "was the individual with supervisory capacity and control over activities occurring within the Establishment on [the date of violation];" *J&J Sports Prods. v. Benson*, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (same)).

Accordingly, the Court finds that a reasonable jury could find Mr. Rivera individually liable based his ownership in La Pica and because he was present at La Pica on Fight Night. As such, the Court will deny Mr. Rivera's motion for summary judgment on this ground.

3.2     Authorization of Signal

Next, the defendants both argue they cannot be liable because they were "authorized" to receive the Fight because they paid the cable company the pay-per-view fee. Sections 553 and 605 both contain an implicit defense when a cable operator specifically authorizes the signal. 47 U.S.C. § 553(a)(1) ("No person shall intercept or receive…any communications service offered over a cable system, unless specifically authorized to do so by a cable operator…."); 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication….").

The defendants rely on *J&J Sports Productions, Inc. v. Schmalz*, 745 F. Supp. 2d 844 (S.D. Ohio, Sept. 17, 2010), where the court granted summary judgment in favor of a defendant when the defendant was authorized by the signal provider to receive the signal. *Id.* at 851. In *Schmalz*, the defendant obtained the TV signal for a boxing match from the signal provider Time Warner Cable Company ("TWC"), and displayed the program at a place of business. There, the defendant had a commercial account with TWC, and a TWC representative informed the defendant that the cost to broadcast the fight was $54.95. *Id.* at 846. It was undisputed that the defendant did not possess a "black box" or any equipment used to steal or intercept cable service. *Id.* In light of these facts, the court found that the defendant was specifically authorized to receive the signal from TWC, the cable operator, and thus granted summary judgment for the defendant. *Id.* at 851.

Here, the Court finds that material issues of fact preclude summary judgment on this issue. The record is far from clear whether the defendants were indeed authorized to receive the Fight. The defendants assert, through Mr. Rivera's affidavit, that the pay-per-view event was purchased on "the cable TV service." (DPFF ¶ 5). Unlike in *Schmalz,* however, the defendants provide no further detail regarding this alleged cable service, such as, for example, a bill for the event, the amount paid, or even the name of the cable TV service. This is far short of the factual record in *Schmalz*, in which the defendants called the cable company to order the fight and were granted access to the fight at the residential rate. *See* 745 F. Supp. 2d at 845-46. Further, the defendants in *Schmalz* had a valid commercial cable subscription, and the cable company admitted it erred in granting access to the program. *Id.* In addition to the lack of specifics on the pay-per-view purchase, La Pica admits that the Fight was purchased through a customer's cable subscription, and not its own valid commercial cable subscription. (DPFF ¶ 3). As such, *Schmalz* is distinguishable from the facts of this case, and the Court finds the record to be unclear as to whether the defendants were authorized to receive the Fight. Thus, the Court will deny the defendants' motion for summary judgment on this ground.

### 3.3 Dismissal of Section 605 Claim

The defendants allege that it is undisputed that the cable signal at issue here was received via a cable TV service provider. Section 553 governs the interception of cable television programming traveling over a cable network and gives the Court discretion to award between $250.00 and $10,000.00 in statutory damages for "all violations." 47 U.S.C. § 553; *Norris*, 88 F.3d at 468–69. Section 605, in contrast, governs the interception of programming as it travels through the air, *i.e.*, by satellite, and allows for

statutory damages ranging from $1,000.00 to $10,000.00 for "each violation." 47 U.S.C. § 605; *Norris*, 88 F.3d at 468–69. Thus, because the cable signal was received via a cable provider, defendants argue they are entitled to summary judgment on J&J's claim for violation of § 605.

The Court finds that material issues of fact preclude summary judgment on this issue. J&J agrees that § 553 covers cable and § 605 covers satellite, and that recovery may only be under one statute or the other. (*See* Pl's Opp. at 9, Docket #16). However, at this point in the proceedings, the Court is unable to determine whether the signal at issue here was received via cable or via satellite. The defendants contend that the violation occurred via cable, whereas J&J's investigator identified satellite dishes at the establishment.[3] (*See* Docket #22-1 at ¶ 8). As such, the Court finds that material issues of fact exist to preclude summary judgment on this issue, and the Court will deny the defendants' motion on this ground.

3.4   Signal Interception

The defendants further argue they are entitled to summary judgment because J&J has failed to prove there was an "interception" here, which is a required element in TV signal piracy cases. (Defs' Opening Br., Docket #14 at 11-12). This argument, however, is misplaced, and incompatible with the plain language of §§ 553 and 605.

---

[3]The Court notes that J&J's investigator stated that he observed "a large dish antenna located in the parking lot…." (Docket #19-1 at 1). While this assertion does not specifically state that the investigator saw satellite dishes, the Court finds it at least sufficient to create a material issue of fact. The Court also notes that resolution of this issue will not significantly affect the outcome of this case because J&J may ultimately recover under only one theory of liability and the statutes do not differ that drastically in the type of permissible damages.

Specifically, § 553 states in the substantive prohibition: "No person shall intercept or *receive* or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Similarly, § 605 states:

> [N]o person *receiving*…any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception…. No person not being entitled thereto shall *receive*…any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a) (emphasis added).

To begin, the defendants' cited cases fail to discuss the language in § 553. This is likely so because the statutory language is clear that receiving a signal constitutes a violation. This factor alone would be sufficient to deny summary judgment on the § 553 claim. Moreover, the cases upon which the defendants rely in regards to § 605 are inapposite. Section 605(a) is a long paragraph containing four distinct prohibitions. *Norris*, 88 F.3d at 465 (noting that § 605 contains four prohibitory clauses). Courts have expressly found that at least two of the sentences in § 605(a) do require "interception," but at least one sentence requires only receipt. *Id.*; *see also Nat'l Satellite Sports, Inc.*

*v. Eliadis, Inc.*, 253 F.3d 900, 915-16 (6th Cir. 2001) (holding that interception is not required under every clause within § 605(a)).[4]

As such, the Court finds the defendants' argument regarding "interception" of a signal to be unpersuasive. Whether the defendants intercepted or received the signal in this case is immaterial to the issue of liability here. Based on the facts in the record, a reasonable jury could find defendants violated either §§ 553 or 605. Thus, the Court will deny the defendants' motion for summary judgment on this ground.

3.5     Enhanced Damages

Finally, the defendants argue that they are entitled to partial summary judgment as to the enhanced statutory damages for willful violations and those for commercial advantage or gain. (Docket #14 at 12-16). The Court , however, finds that the record is unclear at this juncture as to whether enhanced damages would be appropriate.

Courts have broad discretion in awarding enhanced statutory damages under either §553 or § 605. 47 U.S.C. § 553(c)(3)(B) (if "violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages …."); 47 U.S.C. § 605(e)(3)(C)(ii) (if "violation was committed willfully and

---

[4] *Nat'l Satellite Sports* includes a detailed discussion of the precedent upon which the defendants rely. It explains that *Cablevision of Michigan, Inc. v. Sports Palace, Inc.,* No. 93–1737, 1994 WL 245584 (6th Cir. June 6, 1994) (non-precedential) cited *Smith v. Cincinnati Post & Times–Star*, 475 F.2d 740 (6th Cir. 1973), for an incorrect statement of law. *Nat'l Satellite Sports,* 253 F.3d at 915. The court noted that *Smith's* holding was limited to an interpretation of the second sentence of § 605, and not the entire provision. *Id.* at 915-16. Thus, the court held that "even though [the defendant] did not intercept the communication in question, it nonetheless divulged the telecast of the event to an unauthorized addressee in violation of the first sentence of § 605(a)." *Id.* at 916.

for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages…."); *see also Joe Hand Promotions, Inc. v. Kaczmar*, No. 08 C 2910, 2008 WL 4776365 (N.D. Ill. October 29, 2008).

The Court finds that dismissing the claims for enhanced statutory damages would be inappropriate at this juncture due to the discretionary nature of the damages in this instance. To be sure, there are facts in the record that *could* lead the Court to find enhanced damages appropriate. It is undisputed that La Pica had a cover charge of five dollars the night of the Fight and that approximately 46 to 49 patrons were present while the investigator was present. (*See* DPFF ¶¶ 10-11). At the same time, there are facts to suggest that enhanced damages are inappropriate as well. For example, the defendants maintain that there was no advertisement for the Fight, no cover charge attributable to the Fight (it was the "normal" cover charge), Mr. Rivera did not know he was doing anything improper, and La Pica did not profit from showing the Fight. (*See* DPFF ¶¶ 9-10).

Accordingly, the Court finds that summary judgment on the issue of enhanced damages is not warranted at this time. The Court cautions the parties that nothing should be read into denying summary judgment on enhanced statutory damages. The proper damage award is unclear from the record as it currently exists. At this time, however, some evidence exists in the record to support any of the three levels of damages; thus, summary judgment is improper on the issue of enhanced damages.

4. CONCLUSION

Based on the foregoing, the Court finds that material issues of fact exist to preclude summary judgment in this matter. As such, the Court will deny the defendants' motion for summary judgment in full, and this matter will proceed to trial.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #14) be and the same is hereby DENIED, as more fully described above; and

IT IS FURTHER ORDERED that J&J's motion to file a surreply (Docket #23) be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 7th day of April, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge